**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT D. HUNTER,**

        **Plaintiff,**　　　　　　　**1:08-cv-1291
　　　　　　　　　　　　　　　　　　(GLS\RFT)**

    **v.**

**COUNTY OF ALBANY,**

        **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Tulley, Rinckey Law Firm<br>441 New Karner Road<br>Albany, NY 12205 | GREG T. RINCKEY, ESQ.<br>DOUGLAS J. ROSE, ESQ.<br>KILEY D. SCOTT, ESQ. |
| **FOR THE DEFENDANT:**<br>McNamee, Lochner Law Firm<br>677 Broadway<br>Albany, New York 12207-2503 | DAVID J. WUKITSCH, ESQ. |

**Gary L. Sharpe
District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff Robert Hunter maintains this action against defendant

County of Albany, asserting claims of unlawful discrimination and

harassment in violation of Title VII of the Civil Rights Act of 1964[1] and New York State Human Rights Law (NYSHRL).[2] (*See* 2d Am. Compl., Dkt. No. 95.) Pending is Albany County's motion for summary judgment. (Dkt. No. 100.) For the reasons that follow, Albany County's motion is granted and Hunter's complaint is dismissed.

## II. Background

Plaintiff Robert Hunter, a Native American, began his employment with defendant Albany County as a corrections officer on September 7, 2001. (*See* Def. SMF ¶ 1, Dkt. No. 100:25; Pl. Resp. SMF ¶ 3, Dkt. No. 106.) Hunter alleges that during his employment, he was subjected to a discriminatory, hostile, and offensive work environment that included ridicule and harassment, derogatory remarks, and racial epithets and name calling. (*See* 2d Am. Compl. ¶¶ 7-8, Dkt. No. 95.)

On November 26, 2007, Hunter filed a charge of race-based discrimination with the Equal Employment Opportunity Commission (EEOC) and the New York State Division of Human Rights. (*See* Wukitsch Aff., Exs. E, F, Dkt. No. 100:7-8.) Shortly thereafter, on January 30, 2008,

---

[1] 42 U.S.C. § 2000e, *et seq.*

[2] N.Y. EXEC. LAW §§ 290, *et seq.*

2

Hunter filed a complaint with the Albany County Affirmative Action Office (AAO) in which he alleged that he was subjected to derogatory comments regarding his national origin; was depicted with other officers in a video of an inmate escape that was set to the Benny Hill Show theme song, *Yakety Sax*; was ordered to perform fifteen-minute rounds; was criticized by management for filing a disciplinary report against an inmate for faking a medical emergency; received a poster which depicted Native Americans and had the words "The Hunter Family" written on it; and was told that unless he dropped his claims, a discrimination complaint would be filed against him.  (*See* Def. SMF ¶¶ 7, 12, Dkt. No. 100:25; *see also* Wukitsch Aff., Ex. U, Dkt. No. 100:23.)  Upon completing an investigation of Hunter's claims, the AAO issued a decision dismissing most of Hunter's claims but finding that the poster incident was improper and evidenced potential discrimination.  (*See* Def. SMF ¶¶ 8-9, Dkt. No. 100:25.)  In response, the Albany County Sheriff took remedial actions, which included ordering all staff to attend personal awareness training and, at lineup, re-instructing all staff of the County's anti-discrimination policies, rules of conduct, and avenues of redress.  (*See id.* at ¶¶ 9-11.)

On August 6, 2008, the EEOC issued a right-to-sue letter to Hunter

3

notifying him of the right to file a civil action under Title VII.  (*See id.*)

Consequently, on December 1, 2008, Hunter commenced this action against Albany County and several other defendants.  (*See* Compl., Dkt. No. 1.)  During the pendency of this action, Hunter filed a workers' compensation claim against Albany County.  (*See* Def. SMF ¶ 13, Dkt. No. 100:25.)  A workers' compensation hearing was held on February 25, 2009. (*See id.* at ¶ 14.)  At the hearing, Hunter was represented by counsel, testified, and had the opportunity to submit evidence and cross-examine witnesses.  (*See id.* at ¶¶ 14-15.)  On April 7, 2009, the Workers' Compensation Judge issued a decision denying Hunter's claim based on a finding that Hunter was a willing participant in the discriminatory conduct because he had also engaged in derogatory behavior and made ethnic and racial comments at the facility.  (*See id.* at ¶ 16; *see also* Wukitsch Aff., Ex. T, Dkt. No. 100:22.)

Hunter resigned from his employment with Albany County on June 28, 2010.  (*See* Def. SMF ¶ 17, Dkt. No. 100:25.)  He contends, in conclusory fashion, that as a result of Albany County's discriminatory behavior, he was "denied various benefits of employment, including but not limited to, promotional opportunities, normal career progression, and

4

benefits, and was compelled to leave his position of employment with the County." (2d Am. Compl. ¶ 10, Dkt. No. 95.)

In December 2010, Hunter stipulated to, and the court ordered, the dismissal of all claims against all defendants except the Title VII and NYSHRL claims against Albany County. (*See* Dkt. Nos. 94, 99.) Albany County subsequently moved for summary judgment. (Dkt. No. 100.)

### III. Standard of Review

The standard for the grant of summary judgment is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle*, 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

### IV. Discussion

Albany County argues that Hunter's discrimination and hostile work environment claims are founded on a set of sporadic acts that occurred outside the limitations period, and that such acts fail to provide an adequate basis for liability under Title VII and NYSHRL. (*See* Def. Mem. of Law at 9-11, 15-23, Dkt. No. 100:24; Def. Reply Mem. of Law at 1-7, Dkt. No. 108.) Without any meaningful discussion of the facts, Hunter counters that his claims were timely made within the harbor of the continuing

5

violation doctrine, and that he has established a case of discrimination and hostile work environment. (*See* Pl. Resp. Mem. of Law at 3-8, 11-14, Dkt. No. 105.) Upon review of the record, and with a particular focus on Hunter's testimony and affidavit, (*see* Dkt. Nos. 100:9, 100:21, 104), the court concurs with Albany County and finds that Hunter has failed to proffer facts, let alone allegations, sufficient to allow a reasonable jury to find in his favor.

### A.   Title VII

Under Title VII, it is "an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

To maintain a suit under Title VII, a plaintiff "must file timely administrative charges" before bringing suit in federal court pursuant to Title VII. *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006). If the plaintiff has instituted proceedings with an appropriate state agency, he "has 300 days from the occurrence of an adverse employment action to file charges with the EEOC." *Id.* (citing 42 U.S.C. § 2000e-

6

5(e)(1)).  This timeliness requirement operates "analogous to a statute of limitations."  *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).  Under this statutory limitation, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  In general, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" and therefore each act "starts a new clock for filing charges."  *Morgan*, 536 U.S. at 113-14.  Yet, in limited circumstances, acts falling outside the limitations period can constitute part of a "continuing violation" that "occurs over a series of days or perhaps years."  *Id.* at 115.  A continuing violation exists where "discriminatory acts [are] committed under an ongoing policy of discrimination," *Annis v. Cnty. of Westchester*, 136 F.3d 239, 246 (2d Cir. 1998) (internal quotation marks and citation omitted), or "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice," *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994).

 A plaintiff may use prior acts "as background evidence in support of a

7

timely claim." *Morgan*, 536 U.S. at 113. Thus, "evidence of an earlier alleged [discriminatory or] retaliatory act may constitute relevant background evidence in support of [a] timely claim ... [and] may be considered to assess liability on the timely alleged act." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176-77 (2d Cir. 2005) (internal quotation marks and citation omitted); *see also Klein v. N.Y. Univ.*, No. 07 Civ. 160, 2008 WL 3843514, at *2 (S.D.N.Y. Aug. 14, 2008).

**1.    Race Discrimination**

In analyzing claims of race discrimination, courts apply the burden-shifting rules first set forth in *McDonnell Douglas Corp. v. Green*, which place upon the plaintiff the initial burden of making out a prima facie case of discrimination. 411 U.S. 792 (1973). A plaintiff must satisfy this burden by showing: "(1) membership in a protected class; (2) satisfactory job performance; (3) termination from employment or other adverse employment action; and (4) the ultimate filling of the position with an individual who is not a member of the protected class." *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001). The term "adverse employment action" includes discharge from employment by constructive

8

discharge.³  *See Fitzgerald v. Henderson*, 251 F.3d 345, 357 (2d Cir. 1996).  The fourth prong may be satisfied by demonstrating that "the discharge or adverse employment action occurred under circumstances giving rise to an inference of discrimination" based on the plaintiff's membership in a protected class.  *Id.*  The Second Circuit characterizes the plaintiff's prima facie burden as "minimal."  *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (citations omitted).

"A plaintiff's establishment of a prima facie case gives rise to a presumption of unlawful discrimination that shifts the burden of production to the defendant, who must proffer a 'legitimate, nondiscriminatory reason' for the challenged employment action."  *Woodman*, 411 F.3d at 76 (internal citations omitted).  If the defendant proffers a legitimate, nondiscriminatory reason for the challenged employment action, the presumption of discrimination drops out of the analysis, and the defendant "will be entitled to summary judgment ... unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).

---

³"Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit voluntarily." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996); *see also Fitzgerald v Henderson*, 251 F.3d 345, 358 (2d Cir. 1996).

9

Ultimately, once the burden shifts back to the plaintiff, the plaintiff must show, without the benefit of the presumption, "that the employer's determination was in fact the result of racial discrimination." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). The plaintiff must demonstrate by a preponderance of the evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). This showing may be made "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.*; *see also Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1180-81 (2d Cir. 1992). Thus, to avoid summary judgment, "the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Holcomb*, 521 F.3d at 138 (internal quotation marks and citation omitted).

As to Hunter's prima facie burden, the court is not satisfied that he suffered an adverse employment action. There are only three bases upon

10

which Hunter seems to allege an adverse employment action. First, on March 10, 2007, Hunter reported to his supervisor that he smelled the odor of marijuana in the facility and requested that he be allowed to perform a shakedown of the facility. (*See* Clark Aff. ¶ 23, Dkt. No. 100:1.) However, his supervisor, Sergeant Timothy Francis, ordered Hunter and his partner to perform fifteen-minute rounds of the facility. (*See id.*; *see also* Hr'g Tr., Hunter Test. at 33-34, Dkt. No. 100:9 (testifying that because he could not pinpoint which cell was emitting the odor, Sergeant Francis stated "I have got other stuff to do, so for the rest of the night you are going to have to do 15 minute rounds").) Hunter contends that at that time, fifteen-minute rounds were no longer performed and had been replaced by thirty-minute rounds. (*See* Hunter Dep. at 99, Dkt. No. 100:21.) Hunter also vaguely testified that Sergeant Francis "said some sly stuff to [him] ... on a few occasions," but stopped after Hunter asked him to.[4] (*Id.* at 100.) This lone instance of being ordered to perform an irregular task during a single shift

---

[4] At the workers' compensation hearing, Hunter also testified that one of his supervisors, Captain Chris Clark, told him to "[s]top the bullshit" and then referred to Hunter and others as "cunts." (*See* Hr'g Tr., Hunter Test. at 34, Dkt. No. 100:9.) However, this—like certain other incidents, including the inmate escape video, which portrays over a dozen other correctional officers all in the same light, labels the facility staff as "The Keystone Cops," and contains no trace of discriminatory design, (*see* Wukitsch Aff., Ex. U, Dkt. No. 100:23)—fails to show that Hunter was being singled out or was being discriminated against on the basis of his race or nationality.

11

does not qualify, even arguably, as an adverse action.  Moreover, Albany County asserts that "when there is an incident such as ... suspected drug use, more frequent rounds may be required ... in shorter increments such as every fifteen minute to help pinpoint a problem," and that this "was not done to single [Hunter] out, but to insure safety and security."  (Clark Aff. ¶¶ 22-23, Dkt. No.100:1.)

Second, on September 13, 2007, an inmate complained to Hunter about chest pain.  (*See id.* at ¶ 28.)  Hunter, suspecting that the inmate was faking it, warned the inmate that if it was not an emergency, Hunter would write a disciplinary report on the inmate.  (*See id.* at ¶ 29.)  Hunter proceeded to write up the inmate, who was subjected to thirty-days lock up as a result.  (*See id.* at ¶ 30.)  Hunter was thereafter advised by the Assistant Superintendent not to threaten or pursue disciplinary measures with inmates suspected of making false medical complaints.  (*See id.* at ¶ 31.)  This incident neither amounts to an adverse employment action nor transmits an inference of discriminatory intent.

The third and final possible grounds for an adverse employment action is Hunter's June 28, 2010 resignation.  However, the record is devoid of any evidence showing that by June 2010 his work environment

had become so intolerable that his resignation actually constituted a constructive discharge.  Rather, the evidence generally establishes that the incidents that Hunter complained of were random and scattered, and, when brought to his supervisors' attention, were investigated, addressed, and remedied.

Ultimately, Hunter has failed to establish a prima facie case of discrimination, and is further unable to demonstrate that Albany County acted with a discriminatory animus or under a pretext.  Additionally, with January 31, 2007—300 days before Hunter filed his complaint with the EEOC on November 26, 2007—serving as the cutoff day for any timely acts, the court is highly skeptical of the timeliness of the majority of the acts that Hunter's claims are predicated on.  (*See* Hunter Aff. ¶¶ 7-17, Dkt. No. 104.)  Notwithstanding the disturbing content of the verbal abuse that Hunter experienced, there is absolutely no basis upon which to conclude that Hunter was subjected to a continuing violation in the form of an ongoing policy or systemic failure.  Therefore, the court grants Albany County's motion for summary judgment on Hunter's race discrimination cause of action.

**2.    Hostile Work Environment**

13

"A hostile work environment claim requires a showing (1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).  Under the first prong, the plaintiff must demonstrate that "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his] employment were thereby altered." *Id.* (citations omitted).  The plaintiff must show both that the misconduct was "severe or pervasive enough to create an objectively hostile or abusive work environment" and that he "subjectively perceive[d] that environment to be abusive." *Id.*  And to "meet the threshold of severity or pervasiveness," incidents must be "sufficiently continuous and concerted" rather than episodic or isolated. *Id.* (internal quotation marks and citation omitted).

The second prong requires that the plaintiff demonstrate a basis for imputing the misconduct to the employer.  Under Title VII, "employers are not automatically liable for sexual harassment perpetrated by their employees." *Petrosino v. Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004) (citing

14

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)). Rather, where the harassment is attributed to the plaintiff's co-worker, "the employer will be held liable only for its own negligence." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63 (2d Cir. 1998) (citing *Faragher*, 524 U.S. at 802-07). Accordingly, the plaintiff "must demonstrate that [his] employer failed to provide a reasonable avenue for complaint[,] or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009) (internal quotation marks and citation omitted). Where the employer has provided a reasonable avenue for complaint, the plaintiff must "show that (1) someone had actual or constructive knowledge of the harassment, (2) the knowledge of this individual can be imputed to the employer, and (3) the employer's response, in light of that knowledge, was unreasonable." *Id.* at 763 (emphasis omitted).

For reasons similar to those mandating dismissal of Hunter's discrimination claim, Hunter's hostile work environment claim falls short on both prongs. First, as the court has already discussed, the misconduct alleged was not sufficiently continuous and concerted or severe and

15

pervasive as to alter Hunter's employment conditions and create an abusive working environment.  Rather, the evidence, including Hunter's own testimony, overwhelmingly suggests that when Hunter was presented with words or conduct that he perceived to be abusive, he voiced his concerns or utilized the available avenues of relief, and the conduct ceased or was remedied.  And thus, as to the second prong, the record fails to provide any basis to impute the misconduct of Hunter's coworkers and immediate supervisors to Albany County.  Instead, the evidence, when viewed in a light most favorable to Hunter, demonstrates that when an employee had engaged in any race-based discrimination, then (1) the culpable individual would apologize directly to Hunter and the conduct would cease; or (2) the County would investigate the misconduct and take appropriate action.  Accordingly, since Hunter's hostile work environment cannot withstand summary judgment, Albany County's motion is granted.

**B.    NYSHRL**

"[C]laims brought under [NYSHRL] are analytically identical to claims brought under Title VII.  *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997) (citation omitted); *see also Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000) ("The identical standards apply to employment

16

discrimination claims brought under Title VII ... [and] New York Executive Law § 296 ...." (citations omitted)). Here, while the court finds unavailing Albany County's contention that the workers' compensation hearing and decision operates to estop or otherwise preclude Hunter from maintaining his claim under NYSHRL, (*see* Def. Mem. of Law at 11-15, Dkt. No. 100:24), Hunter's NYSHRL claims are nonetheless subject to dismissal for the reasons given above.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Albany County's motion for summary judgment (Dkt. No. 100) is **GRANTED** and Hunter's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 29, 2011
Albany, New York

Gary L. Sharpe
U.S. District Judge